# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB THOMAS DEMASTERS,<br><br>    Petitioner,<br><br>    v.<br><br>PEOPLE OF STATE OF CALIFORNIA,<br><br>    Respondent.<br>_____/ | CV F 05-1402 DLB HC<br><br>ORDER DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS<br><br>[Doc. 9] |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge.

## BACKGROUND

Following jury trial in the Tulare County Superior Court, Petitioner was convicted of two counts of kidnaping for carjacking with personal use of a firearm, vehicle theft and resisting an officer. Petitioner was sentenced to state prison for concurrent life terms on the kidnaping counts, plus ten years for the firearm use, and two years for the vehicle theft. A one-year sentence for resisting an officer was ordered to run concurrently. (CT 238-240.)

Petitioner filed a timely notice of appeal to the California Court of Appeal, Fifth Appellate District. On July 1, 2005, the Court of Appeal affirmed the judgment in its entirety. (Lodged Doc. No. 4.)

Petitioner filed a petition for review with the California Supreme Court. (Lodged Doc.

No. 5.) The petition was denied on September 21, 2005. (Lodged Doc. 5.)

Petitioner did not seek habeas corpus review in the state courts.

The instant federal petition for writ of habeas corpus was filed on April 5, 2006. (Court Doc. 1.) Petitioner filed an amended petition on April 5, 2006. (Court Doc. 9.)

On June 9, 2006, Respondent filed a motion to dismiss the petition as a "mixed" petition containing both exhausted and unexhausted claims. (Court Doc. 12.) On August 10, 2006, the undersigned granted Respondent's motion, but granted Petitioner leave to delete the unexhausted claims and proceed on the single exhausted claim. (Court Doc. 17.) On August 21, 2006, Petitioner filed a motion to withdraw the unexhausted claims, which was granted on August 31, 2006. (Court Docs. 18, 19.)

Respondent filed an answer to the amended petition addressing the single exhausted claim, on September 27, 2006. (Court Doc. 21.) Petitioner filed a traverse on April 5, 2007. (Court Doc. 27.)

## STATEMENT OF FACTS[1]

On the morning of September 2, 2003, Officer Brian Clements attempted to pull over a black Ford Thunderbird for speeding. The driver failed to pull over and Clements pursued, resulting in the Thunderbird crashing. The driver and two passengers escaped on foot, but Clements clearly observed the driver, whom he later identified as [Petitioner]. Clements subsequently learned the car had been reported stolen and the car was dusted for fingerprints.

That same morning, near the scene of the crash, Leanna Perez was approached by an unknown man while starting her car to take her son to school. Through the passenger side window the man asked her to take him to a nearby hospital. Perez saw the man seemed fine and told him she had to take her son to school. For one to two minutes the man argued with her until finally he entered via the passenger door, pointing a gun at Perez and demanding she take him where he wanted to go.

Perez and the man left her house with her seven-year-old son in the back seat, driving in the direction the man indicated. Frightened, she did not look directly at him again and did as the man asked, taking him to the Tavcam Inn approximately five minutes away. Perez contacted the police after leaving her son at school.

Later that same morning Detective Rose Olmos contacted Perez about the kidnapping and took her description of the kidnapper. Perez told Olmos her kidnapper was approximately five feet six inches tall, 130 pounds, with dark hair, a thin moustache, and wearing a gray shirt with black stripes. Olmos showed Perez seven 6-pack photographic lineups, including a photo of DeMasters. Perez

---

[1] The Court finds the Court of Appeal correctly summarized the facts in its July 1, 2005, opinion. Thus, the Court adopts the factual recitations set forth by the California Court of Appeal, Fifth Appellate District.

selected two photos, indicating they resembled her kidnapper, but failed to select DeMaster's photo.

On September 3, 2003, Olmos took photographs of two anonymously reported suspects in the stolen Thunderbird investigation and included them in two additional six-pack photographic lineups for Perez to view. Perez stated only one of the suspects resembled her kidnapper, but she would be better able to identify the individual in person.

On September 4, 2003, Olmos took Perez to a field show-up identification where [Petitioner] and two other men were being detained for a traffic violation. Olmos informed Perez that she suspected one of the individuals being detained was her kidnapper. Perez first observed a Caucasian male by himself but did not recognize him. Perez then identified [Petitioner] upon viewing him with an older Hispanic male. Upon [Petitioner's] arrest, his palm prints matched those found on Perez's car.

(Lodged Doc. No. 4, at pp. 2-3.)

## DISCUSSION

A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Tulare County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.   Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

C.     Admission of Identification Evidence

Petitioner contends that the trial court erred by denying his motion to exclude the identification testimony as inherently unfair and tainted by an unnecessarily suggestive field line-

4

up.

### 1. Background

Prior to trial, Petitioner moved in limine to exclude evidence of Leanna Perez's in-field identification of Petitioner on the basis that the line-up was unduly suggestive and the identification unreliable, denying him his constitutional rights. (CT 98-105; RT 19-21.) The trial court conducted a hearing pursuant to California Evidence Code section 402.[2]

Victim, Leanna Perez testified that on September 4, 2003, two days after the offenses were committed, Detective Olmos transported her to a location to identify a possible suspect. (RT 235.) The detective specifically told her that she did not have to pick anyone out if she was unable to make an identification. (RT 235.) There were three individuals at the location and each was viewed individually. (RT 235-236.) Ms. Perez positively identified Petitioner as her kidnaper after viewing him for approximately 15 to 20 seconds. (RT 236-237, 240.) Likewise, in court, she positively identified Petitioner both as the person shown to her by Detective Olmos and as the person who kidnaped her. (RT 238.) At the time of the identification she was not aware that Petitioner's photograph had been included in some of the photo lineups she had seen previously from which she was unable to identify a suspect. (RT 238.)

Detective Olmos testified at the hearing that on September 4, 2003, he transported Leanna Perez to a location where three men had been detained by another officer in order for her to possibly identify a Michael Breckenridge as a possible suspect in her kidnaping. (RT 246-247, 251.) Mr. Breckenridge was detained along with Petitioner and a third man, Albert Alvarez. (RT 248.) The field lineup took place during daylight hours at a store parking lot, and Leanna viewed the men from approximately 20 to 25 feet away. (RT 247, 249.) Leanna stated that Breckenridge was not the kidnaper. (RT 248.) She was then shown Alvarez and Petitioner, and

---

[2] California Evidence Code § 402 provides:
(a) When the existence of a preliminary fact is disputed, its existence or nonexistence shall be determined as provided in this article.
(b) The court may hear and determine the question of the admissibility of evidence out of the presence or hearing of the jury; but in a criminal action, the court shall hear and determine the question of the admissibility of a confession or admission of the defendant out of the presence and hearing of the jury if any party so requests.
(c) A ruling on the admissibility of evidence implies whatever finding of fact is prerequisite thereto; a separate or formal finding is unnecessary unless required by statute.

she immediately identified Petitioner as the kidnaper.  (RT 249, 252.)

Afer hearing argument by both counsel, the trial court denied Petitioner's motion to exclude Leanna's out-of-court identification of Petitioner and allowed her to identify Petitioner in court before the jury.  (RT 272.)  In making its finding, the trial court took it as a given that the single person show up was unduly suggestive.  (RT 270.)  The court found that in reviewing the totality of the circumstances, the ultimate identification was not unreliable.  The court found Ms. Perez had ample opportunity to view Petitioner at the time of the crime, the degree of Ms. Perez's attention on the perpetrator at the time of the crime favored admissibility, Ms. Perez's verbal description of the perpetrator following the crime was neutral, her level of certainty at the time of the in-field identification was very high, and the time between the crime and the in-field identification was short, only two days, favoring admissibility.  (RT 271.)  Based upon these circumstances, the trial court concluded that Petitioner had failed to met his burden of demonstrating a substantial likelihood of misidentification.  (RT 272.)

In rejecting Petitioner's claim on direct appeal, the Court of Appeal held, in part, as follows:

> We concur with the trial court's assessment that the show-up identification was suggestive.  (*People v. Marquez* (1992) 1 Cal.4th 553, 571-572.) [Petitioner] was one of three suspects shown to Perez by Olmos, but was one of only two Hispanic men, the other being 20 years older.  While identification can involve only one suspect, placing an individual fitting Perez's description of the suspect with those who did not indicates suggestiveness.  (*People v. Ochoa* (1998) 19 Cal.4th 353, 413.)  "A procedure is unfair which suggests in advance of identification by the witness the identity of the person suspected by the police." (*People v. Slutts* (1968) 259 Cal.App.2d 886, 891.)
> Once determined to be unduly suggestive, the identification of the defendant must be deemed reliable to be admitted.  (*Manson v. Brathwaite*, *supra*, 432 U.S. at p. 114.)  The factors comprising reliability include (1) the witness's opportunity to view the defendant; (2) the degree of attention given the defendant at the time; (3) the accuracy of the witness's prior description of the defendant; (4) the level of certainty demonstrated at the identification; and (5) the length of time between the crime and the identification.  (*Id*. at pp. 114-115.)
> Here, Perez's opportunity to view the suspect was significant, as he was just outside the front passenger window bending down to talk to her for one to two minutes.  While a mere few seconds may not be considered enough time to identify a suspect (*People v. Caruso* (1969) 68 Cal.2d 183, 188 [witness obtained no more than a fleeting glance at the suspect, favoring inadmissibility]), one to two minutes of direct conversation is sufficient.  (*Manson v. Brathwaite*, *supra*, 432 U.S. at p. 115 [witness viewed the suspect's face for two to three minutes, favoring admissibility].)  Further, Perez's direct attention to the suspect began when he approached her car, continuing at least until he entered the passenger

>       side.
>           The third factor, the accuracy of Perez's prior description, does not support admissibility as strongly. Perez's failure to identify [Petitioner's] photo from those given to her by Olmos is explainable under the circumstances. Olmos testified [Petitioner's] hair was long and messy at the show-up identification, but was shaved in the photo shown to Perez. In addition, the photo lineups were composed of similar looking persons, increasing the difficulty for Perez of identifying her kidnapper with certainty. While Perez's recollection of the suspect may not have been perfect, it is properly left to the jury to determine how much credence to give an identification, suggestive or otherwise. "We are content to rely upon the good sense and judgment of America juries, for evidence with some element of untrustworthiness is customary grist for the jury mill." (*Manson v. Brathwaite*, supra, 432 U.S. at p. 116.)
>           Fourth, the level of accuracy Perez demonstrated when identifying [Petitioner] at the show-up identification reinforces admissibility. She viewed [Petitioner] for 15 or so seconds before claiming with certainty he was the suspect. Finally, the fact the identification took place two days after the crime occurred favors admissibility as well. (*Manson v. Brathwaite*, supra, 432 U.S. at p. 116) [11 days between the crime committed and arrest for identification found reliable].)
>           In addition, [Petitioner's] palm prints found on the outside of the passenger door of Perez's car support admissibility. While this by itself is not indicative of [Petitioner] as the kidnapper, it does reinforce Perez's show-up identification. Similarly in *Manson*, the court found the fact that the identified drug seller was arrested at the place the sale was reportedly made appeared to corroborate the reliability of the identification. "Although it plays no part in our analysis, all this assurance as to the reliability of the identification is hardly undermined by the facts that respondent was arrested in the very apartment where the sale had taken place, and that he acknowledged his frequent visits to that apartment." (*Manson v. Brathwaite*, supra, 432 U.S. at p. 116.)

(Lodged Doc. No. 4, at pp. 5-6.)

    2.        <u>Analysis of Claim</u>

"[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside . . . only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." <u>Simmons v. United States</u>, 390 U.S. 377, 384 (1968). The court reviews the totality of the circumstances surrounding the challenged procedure for improper suggestiveness. <u>United States v. Bagley</u>, 772 F.2d 482, 492 (9th Cir. 1985). If the court concludes that the procedure was not impermissibly suggestive, the inquiry ends. <u>Id</u>. However, if the court concludes otherwise, it must determine whether the identification was nevertheless reliable under the totality of the circumstances. <u>Id</u>.

    In order to determine whether the admission of identification evidence violates a

defendant's right to due process of law, the court considers (1) whether the identification procedure was unduly suggestive and unnecessary, and, if so, (2) whether the identification itself was nevertheless reliable under the totality of the circumstances, taking into account such factors as the opportunity of the witness to view the suspect at the time of the offense, the witness's degree of attention at the time of the offense, the accuracy of his or her prior description of the suspect, the level of certainty demonstrated at the time of the identification, and the lapse of time between the offense and the identification. Manson v. Brathwaite, 432 U.S. 98, 104-107, 114 (1977); Neil v. Biggers, 409 U.S. 188, 199-200 (1972).

> The defendant bears the burden of demonstrating the existence of an unreliable identification procedure. [Citations.] "The question is whether anything caused defendant to 'stand out' from the others in a way that would suggest the witness should select him." [Citation.] ¶ Moreover, there must be a "substantial likelihood of irreparable misidentification" under the "' "totality of the circumstances"'" to warrant reversal of a conviction on this ground.

Manson v. Brathwaite, 432 U.S. at 104-107; see also Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995).

Respondent takes issue with the trial court's initial finding that it was a given that the identification procedure in the field was unduly suggestive. Like the state courts, even if this Court assumed it was suggestive, in reviewing the totality of the circumstances, the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, and this Court need not determine that issue. See e.g. Van Pilon v. Reed, 799 F.2d 1332, 1339 (9th Cir. 1986) (reviewing court may assume suggestiveness and review reliability first.)

The evidence produced at trial established that Ms. Perez viewed Petitioner in broad daylight from close range for approximately a "couple of minutes" during the crime. (RT 183-184, 186.) Specifically, Petitioner bend down to look through the window to talk with Ms. Perez from approximately two or three feet for a couple minutes. (RT 224-225.) Although she was frightened for herself and her son and did not look directly at Petitioner during the five minute drive to the hotel, as Respondent submits, she unquestionably payed close attention to him as he pointed the gun at her and repeatedly directed her to take him to a hospital. (RT 183-184, 186,

191.) In turning to Ms. Perez's description of Petitioner, although there were some inconsistencies and it was general in nature, it was properly characterized and balanced by the trial court as being "neutral."  (RT 271.)  Ms. Perez made the identification within two days after the crime occurred weighing in favor of the reliability of the identification.  (RT 234-236.)  Lastly, Ms. Perez stated unequivocally that Petitioner, and not the other two individuals, was her kidnaper after viewing him for approximately 15 to 20 seconds, immediately stating "that's him."  (RT 249-250.)  Moreover, the other evidence demonstrating Petitioner's involvement in the crime strengthens the conclusion that there was not a substantial likelihood of misidentification.  As observed in Manson,

> Although it plays no part in our analysis, all this assurance as to the reliability of the identification is hardly undermined by the facts that [the defendant] was arrested in the very apartment where the [crime] had taken place, and that he acknowledged his frequent visits to that apartment.

432 U.S. at 116.  Likewise, here, the strong evidence of Petitioner's palm print on Ms. Perez's car, and his incriminating statements following his arrest, definitely do not weaken the determination of the reliability of the identification in this case.

The five factors as outlined in Manson, on balance, weigh in favor of admissibility of the in-field identification, and there is no showing that the identification procedure gave rise to a "substantial likelihood of irreparable misidentification."  As the state appellate court properly identified and did not unreasonably apply established Supreme Court authority, Petitioner's claim fails under § 2254(d)(1).

## ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1. The instant petition for writ of habeas corpus is DENIED; and
2. The Clerk of Court is directed to enter judgment in favor of Respondent.

IT IS SO ORDERED.

Dated:   **October 31, 2007**              /s/ **Dennis L. Beck**
                                       UNITED STATES MAGISTRATE JUDGE